IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL - 6 2011
CLERK, U.S. DISTRICT COURT
by_____
Deputy

| | |
|---|---|
| ALEXANDER WEHR | § § § |
| VS. | § NO. 4:10-CV-759-A § (NO. 4:06-CR-206-A) § |
| UNITED STATES OF AMERICA | § § |

MEMORANDUM OPINION
and
ORDER

Came on to be considered the motion of movant, Alexander Wehr, under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Having reviewed all of the parties' filings, the entire record of this case, and applicable legal authorities, the court concludes that the motion should be denied.

I.

Background

Movant on January 12, 2007, pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. The court on April 26, 2007, sentenced movant to a term of imprisonment of 135 months, to be followed by a three-year term of supervised release. The United States Court of Appeals for the Fifth Circuit affirmed movant's conviction and sentence. United States v. Wehr, 309 F. App'x 821 (5th Cir. Feb. 5, 2009).

II.

Grounds of the Motion

As the first ground for relief, movant claimed that he received ineffective assistance from his appellate counsel, Matthew Robinson ("Robinson"). Movant gave as the second ground that his trial counsel, Michael P. Gibson ("Gibson"), was ineffective due to his financial and personal interest in the case. Movant alleged as his third ground that his guilty plea was not knowing and voluntary. The fourth ground claimed ineffective assistance by Robinson due to counsel's failure to adequately address on appeal the court's denial of acceptance of responsibility.

As to ground five, movant alleged that Robinson was ineffective for failing to challenge Gibson's failure to seek application of the "safety valve" on movant's behalf. In ground six movant maintained that both Gibson and Robinson were ineffective because both failed to challenge the court's enhancement of his sentence "based on facts found by the judge and that under Blakely and Booker[1] the sentence imposed on petitioner in a mandatory fashion violated his Sixth Amendment

---

[1] Blakely v. Washington, 542 U.S. 296 (2004); United States v. Booker, 543 U.S. 220 (2005).

right to jury trial." Mot. to Vacate, Set Aside, or Correct Sentence by A Person in Federal Custody ("Mot.") at 11.

As the factual basis for ground one, movant claimed Robinson failed to raise on direct appeal the issue of Gibson's ineffectiveness.

As the factual basis for movant's second ground he alleged that a "third party borrower returned over $70,000 to counsel's escrow account" in April 2006, more than a year prior to movant's sentencing. Movant's Opening Br. & App. at e. Movant contended the funds were to be used for restitution; however, upon movant's incarceration, Gibson allegedly billed against and withdrew the funds as attorney's fees. Movant contended Gibson's "sole intent after receipt of the $70,000 restitution funds" was for Gibson's "sole personal gain while minimizing, and failing" movant's defense. Id.

In ground two, movant also maintained Gibson failed to disclose "past personal and civil judgments against him from Judge McBryde" and refused to file a motion for disqualification or change of venue. Id. at f. Movant also alleged Gibson was ineffective by failing to investigate or at least retain a forensic accountant to accurately determine restitution amounts, and by failing to address error in the determination of movant's

base offense level and guideline range.

The factual basis of the third ground consisted primarily of movant's contention that Gibson was ineffective because he advised movant that restitution owed other potential victims could not be used against him, and that Gibson failed to investigate or obtain proper forensic accountings. Movant claimed he would not have pleaded guilty had he known he would be penalized for the other victims; thus his guilty plea was unknowing and involuntary.

In the factual basis for ground four movant asserted that Robinson failed to argue on direct appeal that the court's decision to deny a three-point reduction for acceptance of responsibility was without foundation, and failed to provide adequate information to the court of appeals to review movant's behavior to determine if the court properly denied acceptance of responsibility.

Movant described the factual basis of ground five as the failure of Robinson to raise on appeal Gibson's failure to argue for application of the "safety valve" found in section 5C1.2 of the United States Sentencing Guidelines even though Gibson knew movant would be exposed to multiple enhancements.

As to the factual basis of ground six, movant contended that

4

both Gibson and Robinson were ineffective for failing to argue that the sentence imposed, including the upward departure, was unreasonable, in violation of the Sixth Amendment, and applied in a mandatory sentence in violation of Booker. Movant also claimed that the court erred in ordering him to pay any of the remaining balance of his restitution obligation upon commencement of supervised release because the court failed to take into account movant's limited financial resources.

III.

Treatment of § 2255

After conviction and exhaustion of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. United States v. Frady, 456 U.S. 152, 164 (1982); United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991). A defendant can challenge his conviction or sentence after it is presumed final only on issues of constitutional or jurisdictional magnitude and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the errors. Shaid, 937 F.2d at 232. Section 2255 does not offer recourse to all who suffer trial errors, but is reserved for transgressions of constitutional rights and other narrow injuries

5

that could not have been raised on direct appeal but, if condoned, would result in a complete miscarriage of justice. United States v. Capua, 656 F.2d 1033, 1037 (5th Cir. 1981).

IV.

### None of the Grounds Has Merit[2]

To prevail on a claim of ineffective assistance of trial or appellate counsel, movant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Both prongs of the Strickland test must be met to demonstrate ineffective assistance, and both components need not be considered if movant makes an insufficient showing as to one. Id. at 687, 697.

In the context of a plea agreement, movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

---

[2]Each of the grounds asserted a claim of ineffective assistance of either Robinson or Gibson. The court will address all the claims against Gibson in one section, and all claims against Robinson in another, rather than discussing each separate ground of the motion.

Here, movant is entitled to no relief based on the alleged ineffective assistance of counsel because he has failed to meet the standard set forth by <u>Strickland</u> as to Gibson or Robinson.

A.  <u>Ineffective Assistance of Gibson</u>

Movant's claim that Gibson rendered ineffective assistance due to a financial and personal conflict in the case is without support in the record. The alleged conflict concerned over $70,000 movant contended was delivered to Gibson for the purpose of paying restitution to Nicky Faylor ("Faylor"), one of movant's victims; however, movant claimed Gibson wrongfully designated and kept the money as attorney's fees.

Nothing in the record supports movant's assertion. Attached to movant's brief are letters from movant to Gibson, statements of account from Gibson to movant, and letters purportedly from movant's mother to an official with the State Bar of Texas concerning movant's complaint against Gibson. Nothing in these documents provides evidence of a transfer of Faylor's funds to Gibson or otherwise documents Gibson's receipt of any funds. There is also no evidence to support the contention that the money was intended by movant as restitution for Faylor.

In his objections to the presentence report, movant claimed he was never in possession of the $79,000 allegedly withdrawn

7

from Faylor's account. Instead, according to movant, the funds were sent to someone in Fort Duchenne, Utah, as a loan for the Ute Indian Tribe. An FBI agent assigned to movant's case investigated this claim and found it to have no substance. Instead, the agent learned that the money had been transferred to a Wells Fargo bank account used by movant. The conclusion in the presentence report was that movant's explanation was misleading.

Additionally, movant alleged that Gibson received the $70,000 restitution funds in April 2006. However, during testimony concerning the amount of restitution owed to Faylor during movant's sentencing hearing in April 2007, movant never informed the court of the $70,000 allegedly being held by Gibson for that purpose. The only support for movant's claim concerning the $70,000 is the allegations in his motion. However, "conclusory allegations do not raise a constitutional issue in a habeas proceeding." Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (per curiam). The record fails to support movant's contention that Gibson was operating under a financial or personal conflict of interest.

Likewise, no evidence in the record supports movant's claim that Gibson should have moved for disqualification or change of venue, nor does any evidence support even a contention of

8

"potential tension" between Gibson and the undersigned that would have warranted such action. Movant apparently relied for this contention on <u>Resolution Trust Corp. v. Oaks Apartments Joint Venture</u>, 753 F. Supp. 1332 (N.D. Tex. 1990), attached as an exhibit to his brief, where one of the partners in the defendant joint venture was identified as "Mike Gibson." No other information was provided in that case or in movant's filings to identify any connection between the "Mike Gibson" in <u>Resolution Trust</u> and the Gibson who was movant's criminal defense attorney. Further, <u>Resolution Trust</u> was decided in 1990. Even if the two Mike Gibsons are one and the same, movant has adduced no evidence that interactions between Gibson and the undersigned in a case decided in 1990 had any bearing on Gibson's representation of movant in a criminal case sixteen years later.

In any event, Gibson's conduct during movant's rearraignment and his sentencing hearing demonstrate that he was not hindered by any trepidation towards the undersigned. Gibson raised and vigorously argued objections, presented evidence and testimony in support of his objections, and cross-examined the government's witness. Nothing in the record before the court lends credibility to movant's assertions, and the court finds them frivolous.

Movant's claims regarding Gibson's failure to hire a forensic accountant are similarly meritless. The court ordered restitution in the amount of $1,620,769, to be apportioned to all of movant's victims as set forth in the court's judgment. Movant contended that the total restitution ordered exceeded the $759,000 identified in the plea agreement, and alleged that a forensic accountant could have determined accurate restitution amounts to rebut the amounts presented by the government. Movant thus claimed that Gibson's failure to hire a forensic accountant resulted in him paying restitution that far exceeded the amount in the plea agreement.

A review of the plea agreement, however, fails to support movant's contentions. The plea agreement contains the following language as to restitution:

> 5. **Restitution:** The defendant agrees that the restitution in this case is not limited to that conduct alleged in the information. The defendant agrees that the order of restitution shall include restitution to the victims of all of his fraudulent activity related to his securities/investment activities, including but not limited to the victims related to the Wendy Rosenfeld investments (including the beneficiaries of the trust accounts), the Mary Pelka investments (including the Raymond James investment firm), the Victor Shami investments, the Violet Kulberta investments, the Peggy Avery investments, and the Jean Beauregard investments. The actual amount of restitution owed to each victim is to be determined by the Court.

Plea Agreement at 3. Nowhere in the plea agreement is restitution limited to $750,000. Instead, the plea agreement makes clear that restitution will be required as to all of the named victims.

Movant signed the plea agreement, and testified at his rearraignment hearing that he had read the document, discussed it with his attorney, and understood its contents and legal significance before signing it. Rearraignment Tr. at 23-24. Thus, he should have known and understood that restitution would be calculated as to all his victims, not just the individual named in the charging information. Gibson also objected to some of the restitution amounts recommended in the presentence report, offered documentation and detailed explanations as to why he believed alternate amounts were correct, and argued in support of those objections during the sentencing hearing. Movant has offered nothing to show that a forensic accountant would have added anything to Gibson's detailed objections on the subject of restitution or that he was prejudiced by the lack of such an expert.

To the extent the motion is grounded on the order to pay restitution upon commencement of supervised release, "complaints concerning restitution may not be addressed in § 2255

proceedings." United States v. Hatten, 167 F.3d 884, 887 (5th Cir. 1999).

Movant further maintained that Gibson promised him a sentence of twenty-four months or no more than three years, and asserted he would not have pleaded guilty had he known instead that he would be penalized for the other restitution victims that increased his overall sentence.[3] This conduct, according to movant, rendered his guilty plea unknowing and involuntary.

For a guilty plea to be knowing and voluntary, the defendant must have "a full understanding of what the plea connotes and of its consequence." United States v. Hernandez, 234 F.3d 252, 255 (5th Cir. 2000) (per curiam) (internal quotations and citations omitted). However, "[t]he defendant need only understand the direct consequences of the plea; he need not be made aware every consequence that, absent a plea of guilty, would not otherwise occur." Id. (internal citations omitted). The defendant's representations, as well as those of his lawyer and the

---

[3] Movant is entitled to an evidentiary hearing on Gibson's alleged misrepresentations only by proving "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998) (internal citations omitted). Movant with his reply submitted his own affidavit to bolster his argument for an evidentiary hearing. The court finds movant's affidavit and corresponding argument unavailing. First, the document is not a proper affidavit or declaration. Second, the document, submitted with movant's reply to the government's response, may be considered an unauthorized attempt to amend pleadings, which the court need not consider. Id. at 1110-11. Third, movant failed to produce "independent indicia of the likely merit of [his] allegations" in the form of an affidavit from a "reliable third party." Id. at 1110. The only other affidavit submitted by movant was from his mother, Gladys Wehr; her affidavit failed to demonstrate any personal knowledge of any alleged promises made by Gibson. Accordingly, movant is not entitled to an evidentiary hearing on this issue.

prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Solemn declarations in open court carry a strong presumption of truthfulness, and a defendant bears a heavy burden to show that the plea was involuntary after testifying to its voluntariness in open court. DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994).

The record here squarely contradicts movant's claim. In the plea agreement, movant acknowledged that he had reviewed the guidelines with Gibson, but understood that "no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case." Plea Agreement at 2. At rearraignment, the court explained how it determined movant's applicable guideline range and read the possible penalties to which movant would be subjected, including up to twenty years' imprisonment. Movant testified that he understood that the sentencing guidelines were advisory but knew they would apply to his case, and he testified that he understood the possible penalties and punishments. Rearraignment Tr. at 7-11, 27-28. Also during rearraignment, upon specific questioning by the court, movant denied that anyone had made any promise or assurance, outside the plea agreement, to induce him to plead

guilty. Id. at 34.

After considering all of the aforementioned testimony, the court expressly found movant's plea to be knowing and voluntary. Id. at 36. Under these facts, it is clear that movant knew the consequences of his plea as contemplated by the Fifth Circuit, and the court cannot now conclude that movant's plea was anything other than knowing and voluntary.

Movant's final claim against Gibson, that he failed to challenge enhancements to his sentence based on facts found by the court in violation of his Sixth Amendment rights, affords movant no relief. Contrary to movant's assertion, Gibson raised that very challenge in his objections to the presentence report, and reurged the objection during movant's sentencing hearing. That the court overruled the objection does not constitute ineffective assistance. Youngblood v. Maggio, 696 F.2d 407, 410 (5th Cir. 1983) (per curiam). Movant's claim was without merit in any event, as the sentencing court is entitled to find all the facts relevant to determining either the appropriate sentencing range or for determining a non-Guidelines sentence. United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005).

B.  Ineffective Assistance of Appellate Counsel

As to movant's claim that Robinson should have raised a claim of ineffective assistance of counsel on appeal, "[t]he

14

general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." United States v. Higdon, 832 F.2d 312, 313-14 (5th Cir. 1987) (internal citations omitted). Claims of ineffective assistance are allowed on direct appeal only in "rare cases" where the record of the case lends itself to resolution of the claim. Id. Instead, "a § 2255 motion is the preferred method for raising a claim of ineffective assistance of counsel." United States v. Gordon, 346 F.3d 135, 136 (5th Cir. 2003) (per curiam) (citing Massaro v. United States, 538 U.S. 500, 504 (2003)).

Nothing in the record leads to the conclusion that this is a "rare case" of the type that would have warranted raising a claim of ineffective assistance on direct appeal. Robinson was not ineffective for failing to raise a frivolous argument on appeal. United States v. Reinhart, 357 F.3d 521, 525 (5th Cir. 2004).

Movant's contention that Robinson was ineffective for failing to adequately address the court's denial of a reduction for acceptance of responsibility is without merit, essentially for the reasons provided by the government in its response. In his initial appellate brief, Robinson raised the argument that

the court's denial of acceptance of responsibility was without foundation, and persisted in his argument for five pages of his brief. Robinson addressed the issue again in his reply brief. Robinson was not ineffective merely because he was unsuccessful. <u>Youngblood</u>, 696 F.2d at 410.

Movant's fifth ground, concerning Gibson's failure to seek application of U.S. Sentencing Guideline § 5C1.2, warrants little discussion. Section 5C1.2 allows certain defendants convicted of drug-related crimes to avoid the mandatory minimum sentence. <u>United States v. Rodriguez</u>, 60 F.3d 193, 194 (5th Cir. 1995). Section 5C1.2 is inapplicable to movant's single count of wire fraud. Gibson had no reason to raise application of § 5C1.2 during sentencing, and Robinson had no reason to consider it on appeal.

Finally, movant's claim in ground six is without merit for the same reasons it was frivolous as to Gibson. Robinson was not required to raise frivolous arguments on appeal.

V.

ORDER

Therefore,

The court ORDERS that the motion of Alexander Wehr to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, and 28 U.S.C. § 2253(c)(2), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as movant has not made a substantial showing of the denial of a constitutional right.

SIGNED July 6, 2011.

_____
JOHN McBRYDE
United States District Judge